Mr. Davis for the appellant. Argument not to exceed fifteen minutes per side. I've got another one of these. It's not working. It's cutting in and out. Okay. Is that any better? Yes, thank you. Good. Shall I walk you through it? Yes, please. Well, it's a relatively straightforward case in terms of the challenge to the statute. If you don't post within twenty days, no matter what, you can't challenge it. In this case, it's particularly egregious because Redford has a policy of not accepting bonds. They admitted that. The mother went there, tried to post the bond. They refused. They said, go see the prosecutor. First they said, the marshals have it. So she goes to the marshals. The marshals say, Redford has it. So she goes back. They won't take the bond. The twenty day passes. Blair Langston's in jail the entire time. And under the 1996 Michigan Supreme Court case, in re forfeited goods, there's nothing you can do. I suggest to the court that King John would be offended by that process before 1215. And so I don't know what more to say about it. But that's not a problem on the face of the statute, right? That's an as applied problem, right? Well, the statute doesn't have a judicial review portion. Now the Michigan Supreme Court has said there's no judicial review. And therefore, there's nowhere to go in Michigan. But there is judicial review. Isn't there? I mean, the judicial review comes after you file your claim. But if you prevent it from filing your claim, you can't go to court and say, I wanted to claim, and they wouldn't take it. Okay, but you're saying if you were prevented, and he was prevented, but your constitutionality argument depends on his having been prevented, right? I'm just trying to get at whether we're looking at a facial challenge or an as applied challenge. And it seems to me that it's an as applied challenge. I'll accept that. I believe that a statute which allows the forfeiture of a citizen's property without allowing for judicial review, as every federal statute, administrative procedures act in state court, if your substantial rights are affected and there is no express judicial review, then I think it's facial. But here, I'll accept it as applied. You really don't get to the facial issue, that judicial review part, because technically you didn't file your notice sometime, right? That's a waiver. The notice wasn't filed. Right, the notice wasn't filed. So the question of whether the statute provides for judicial review or not is really not before us. But I think what Judge White is saying is you've got an as applied challenge. He said we couldn't file it because they wouldn't take it. We wanted to post a bond, we wanted to file a notice, but they wouldn't take it. Nobody would let us do it. That's exactly right. I've put forward my position that a statute which allows forfeiture should have in it a procedure for judicial review. And if it doesn't, I think it's invalid. But if the highest court of the state said no, there is judicial review, then don't we have to look at it like that? Don't we have to look at how this is construed in Michigan, which is that they apply the indigency rules to it, so you can get a waiver of a bond, and they also apply judicial review to it. Don't we have to take that whole package of how it's been construed by the state court? My understanding of the state court construction, Your Honor, is that if you don't file in time no matter what cause, then there's no judicial review. A statute wouldn't be unconstitutional if there were in the state a good mechanism for reviewing whether this forfeiture is legal and valid or not. I agree, Judge. There's no question that. I agree. And the state can create that implicitly in a statute if the Supreme Court of the state so holds, which they have done. So the statute itself, the way the Supreme Court of the state has interpreted it, does have a provision in there for contesting the forfeiture. The problem here is the state played musical chairs with your client and hocus pocus, and there was no way to carry out the purpose of the statute to have judicial review because you didn't have any place you could file it. That's your claim. That's my claim. And so far you've done pretty well with that claim. I wouldn't look a gift horse in the mouth, you know. All right. What about mandamus? Mandamus? Yeah. I mean, couldn't he have gone to the court and said, look, they're not accepting this, you know, or ordered them to accept my petition? In other words, Sherita and Blair Langston should have known to go hire a lawyer to file a mandamus. Well, I'm asking you. That's your response, that they shouldn't have to have. And not only that, the chances you could do it within 20 days are kind of slight. Well, we don't really know what would have happened, right, if he had gone to court, if he had started a mandamus action and said that, you know, I tried within 20 days, they wouldn't accept it, please force them to take my petition. The statute says no collateral attack. Well, that's... The drug statute says no collateral attack on the forfeiture provisions. But it's not really a collateral attack because there hasn't really been anything. I mean, I don't think that they could get away with doing that. If it were... Let's say that was their practice. We don't accept petitions. I would think someone would have a very good mandamus case. Okay. Let me ask you this. This statute is a drug statute. And the only thing about drugs in this case is that the drug-sniffing dog pointed... Right. And we know with regard to currency that a lot of currency has been involved with drugs. What is your position about the statute simply doesn't apply here? It doesn't. There's no probable cause. There's no relationship to the statute. But that's more of a due process rather than a... So that's an added or alternative... Yes, of course. ...reason that it just doesn't apply here because there's no connection to drugs. Right. They never should have forfeited. Yeah. Okay. I forgot to say I wanted to reserve time. And now I've only got two minutes. So I'll reserve. It's yours. Good morning, Your Honors. Lindsey Kutchmark on behalf of the Redford defendants. I don't know if you want me to go in any particular order. I was just going to kind of follow the order that he went in. Let's talk about why they wouldn't allow him to or his representative to post a bond so that they could make his claim on the watch. Well, Your Honor, I think that we don't even get to that question because there's no evidence here that Mr. Langston's mother actually tried to file a claim and post a bond within the 20-day period. If you accept and credit her timeline to which she testified... Well, don't we have to in a summary judgment? Absolutely. And I think if you do, that it puts the date that she went to the police department about a week or two late. Because she testified it was two or three weeks after he was found guilty. But if you put both of their testimony together, you could see how it could have been within the time period. I mean, she sort of says what happens. She's not sure exactly when. If she's correct in relation to the proceedings, it's one thing. But you also have his testimony regarding the sequence of asking her and finding out that she couldn't and being concerned and speaking to his lawyer. And the lawyer says, well, they're just trying to make it so you can't do it within this period. And he's looking for other people. I mean, putting it all together, it seems to me that it may very well have been within that time period. Well, Your Honor, to that I would respond. And I do acknowledge that I believe it was in his reply brief that he said his mother said certain things to him and his attorney. I would argue that that's hearsay. And it's also speculation. The fact that he says, oh, I'll get an attorney to try to file the claim and post the bond, I don't think that establishes that she went to the police department within the 20-day period. And to the extent that she did, I think we run into the problem where he hasn't identified the detective who purportedly told him that they don't have the property there. He hasn't identified any of the named officers. And he specifically said he can't establish personal involvement on their part. But we also have the person who's in charge saying, yeah, we don't accept it. And it's very possible that somebody comes there, they go and ask about it, and they don't know anything about it because we don't do it. Well, Your Honor. Who had the property and where is it now? Redford Township, I believe, has custody of the property right now because of the litigation. Who does? Redford Township Police Department. So it would be under the jurisdiction of the chief of police that they're holding it? Yes, I would assume so. Why are you doing that? I mean, this guy is arrested for a credit card operation. And the only connection, there were no drugs. It smelled like, I mean, the money smelled like it. It's not like there's no other explanation for his money. It had to be drugs. He's got this credit card ring going on. He could have gotten it with restitution. Why are you doing this to him? Well, Your Honor, I think in terms of the seizure part of this case, that we have to look at the Fox v. Van Osterum case because that case says, once the act of taking the property is complete, the seizure ends and the Fourth Amendment no longer applies. But you know he tried to. He was asking. He said, can I get my property back now? And your guy says no. And we have a deposition that admits that this is the practice of Redford. Do you always forfeit the money when you arrest somebody? Yes. Well, that's our general practice. Well, when wouldn't you do it? If it's less than $40, we don't do it. So you have somebody in a deposition saying this is what we do. We don't care if it's related to drugs. If we get you with money, we're going to take it. Well, Your Honor, to that I would say that's based on Officer Jones' testimony. And I think it needs to be looked at in perspective because he's with the Special Investigation Unit. And that's basically, I think Officer Norman is the one who testified, that's known as the Narcotic Unit. And only the Special Investigation Unit can serve forfeiture notices. But I'm asking a different question. There were no drugs. There weren't any drugs. Why are you so determined not to give this guy's property back when you know it had nothing to do with drugs? I mean, I can't get in the mind of the officers. What I can say is that there were. . . But you represent the township. Yes. You're the lawyer. Yes. Are you asking why Redford Township has not returned? Why are we here is what I'm trying to find out. I mean, I understand why we're here because this happened. But why is it so important? To be fair, I don't want to reference any. . . Why didn't you as a lawyer just tell Redford Township Chief of Police, look, why don't you just give him the stuff back. We offered to do that. So we can avoid this. . . We offered to do that. And it's actually in his deposition. And he wanted to litigate the case. Okay. That's an answer. I just didn't want to. . . I don't know. Who knows? How big is Redford Township? It's not big. No, it's not big. I don't want to give an inaccurate answer. Are you asking officers, number of officers or just the. . . Small? It's small. It's small, yes. I don't know. They have how many stoplights? It's bigger than that. I'm a native Minnesotan. So I can only get to and from work. I know small towns. It's bigger than that. Okay. Okay, sorry. It sounds like to me they've got a little deal going there in the police department. But who knows? I don't want to accuse them of it. But it's a case not to be here. Did they take his Jaguar? Pardon me? They impounded his Jaguar. Did he ever get that back? I believe that was the federal. . . What about his diamond earrings? He got those back. Yeah, I mean we just were. . . We're just talking about the watch and the cash? Right. Yes, Your Honor. Getting back to the procedural due process, I do think that there's an issue about whether he actually has a protected interest in this property. He openly admits that he acquired it through wire fraud and identity theft. And I understand that the cases that we cited in our brief largely concern drug proceeds. But I think the principle extends beyond that. And that these cases say you never have a vested property right or a protected property right in property that you obtain illegally. And I think that applies here as well. But I think that . . . I don't think it means property that you obtain with . . . It means property that you obtain illegally. But I think if you purchase something legally, are you saying the taint applies to that as well? Like the watch. I mean he bought it. He didn't steal it. Right. But he bought it with funds that he obtained through wire. But then no one would ever have standing if you're . . . I mean . . . Well, I mean that's the position that we would take on that. And I understand that we weren't able to find a specific beyond the drug proceeds. But I feel like the principle should extend to this case. And I just . . . And did they ever charge him with wire fraud? Was he ever prosecuted for that? He was in federal court. Federal court. Yes. And he owes 400 and something thousand in restitution, doesn't he? Yes. So he'd get it back. And I'm sure the Radford Police Department will let the feds know before they give it back to him. So he may not have his assets for very long. What's the practice now? I mean . . . Well, and, you know, Lieutenant Gilman said that they were kind of under the standing order. Wayne County Prosecutor's Office wanted claimants to post the bond and file the claim there. And so Radford . . . At the county level or at the township level? That would be at the Wayne County Prosecutor's Office level. But why don't you just reprint the notice of forfeiture? Well, Your Honor, the notice of forfeiture, I feel like in some respects they misconstrued that because they say, you know, we got this forfeiture notice from a FOIA request, and it says the seizing agency. But if you look on the top, it says seizing law enforcement agency and then seizing agency. And it's not filled in, but, I mean, it stands to reason that the seizing agency would be the Wayne County Prosecutor's Office. So the notice doesn't tell you where to file a claim? I mean, well, they produced a blank form. So how the Wayne County Prosecutor's Office completes it . . . Who produced the blank form? Mr. Langston did. Don't you have a copy of the form that the township . . . Oh, yes, yes, we do have a copy of that. Is it blank? No, it does say the seizing agency. Okay. But doesn't it tell him where to go to file his claim? I believe it just says the seizing agency. And I see that my time is up. I will entertain any . . . It might be a good idea if you went back and contacted the Bedford Township, Redford Charter Township, and say, we need to resolve this. You were right in the first place when you told them, look, this case is not worth all this. But they say they want you to appear and fight it anyway. You might tell them, I . . . I came, I fought, and I think I'm going to lose. I just want to clarify this. The notice that you gave him, I was under the impression, and I guess I can just look at it, I thought it told him to go to the Redford Police to get his stuff back. Yes. When you were asking me the question about the current procedure, I thought you were . . . Because the current procedure is they send the claimants to the Wayne County Prosecutor's Office. And they say, no, there's no evidence of that procedure. Lieutenant Gilman is making it up. And I was just pointing out that, no, the forfeiture notice that you produced in response to the FOIA request does have two separate boxes for seizing agency and seizing law enforcement agency. And I was just trying to point out that I don't think that's proof that that procedure did not exist. And it would be my position that that still gives them notice or an opportunity to be heard. Thank you. Thank you. Good morning, Your Honors. Lisa Jeminek from the Assistant Attorney General for the State of Michigan. I've been practicing long enough to know not to speak when I don't need to. So if you have any questions, we've intervened solely for the purpose of the facial challenge to the statute, to defend the statute. So if you have questions for me, I'd be more than happy to answer them. Well, what would happen? What should somebody in this situation do? Let's accept that somebody goes to the – they get a notice. They go to the place on the notice. They try to file. And let's say it's the 20th day. They refuse to accept it. And so now they're out of luck. What does the statute provide as a remedy? The statute itself does not provide the remedy. But as Your Honor stated, there is the opportunity for a writ of mandamus, or as happened in the Hollins case, the claimant who did not receive notice filed a lawsuit. Filed a lawsuit, and state court and the court of appeals said, well, this is how we're going to interpret the prior Michigan Supreme Court case and the statute that says, look, if you don't receive notice, or in this case the opportunity to file his claim, then the forfeiture, the administrative proceeding, the administrative forfeiture is not good, and the circuit court should return the property. But it's not good, and isn't it also a violation of due process? But that would be as applied. Okay. Is that all? Thank you. Well, having wasted all my time on the apple of my eye, which is the facial challenge, let me just say a few words about Redford's position. The Wayne County prosecutor gets involved when the claim is properly filed, and they then have so long to actually bring the forfeiture proceeding. Wait, say this again? The Wayne County prosecutor doesn't get involved unless somebody timely files the claim, and then they have to bring the actual forfeiture proceeding in the circuit court. And so the idea that somehow they're an alternative avenue. They're not involved yet, apparently, because they don't have the property. Right. Okay. Well, there's been a lot of standing, I think it's been discussed, regarding whether or not Sergeant Gilman represented the policy of the township. They didn't file any countering affidavits saying that he wasn't the guy in charge of that operation. That's not in the record, and therefore it's their admission on which our claim lies. Regarding the identification of individual defendants, it's true. We're not sure who did all of them. I tried to name everybody that appeared to be in the chain. Two things, none of the defendants were dismissed by the district court opinion, so they're still in there. And second, under Owens v. Independents, you can have an unconstitutional policy even if you don't have an individually culpable defendant. So that's the Monell claim? I'm sorry? That's the Monell claim? Yes. Regarding whether or not Sherita Langston went there on time, the fact that she doesn't keep a diary, the 20 days is on the notice. She visited her son. He told her, look, here's the claim number. Go get it. We got 20 days. She had no reason to delay. So when it comes down to construing that evidence, you have a citizen saying, yes, I went there. You have an officer saying, I don't know whether she came here or not. You have a district court saying, wow, that isn't proof. You lose. My argument. Thank you. Thank you, Your Honor. Thank you both. Sorry we beat you up.